CSM LEGAL, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X

ALEJANDRO PEREZ RAMIREZ, JILMAR
RAMIREZ (AKA BRYAN GARCIA), JOSE
ESTUARDO PEREZ RAMIREZ, MARCOS
ISRAEL PEREZ RAMIREZ (AKA VICTOR
PEREZ), OMAR EVERARDO CLEMENTE
RAMIREZ, and YEISER LOPEZ, *individually
and on behalf of others similarly situated,*

**COMPLAINT**

**COLLECTIVE ACTION UNDER
29 U.S.C. § 216(b) AND RULE 23
CLASS ACTION**

Plaintiffs,

-against-

**ECF Case**

HERMES B NY LLC (D/B/A EMPANADA
MAMA EXPRESS), PGNV LLC (D/B/A
EMPANADA MAMA), and SOCRATES
NANAS,

*Defendants.*

-----------------------------------------------------------X

Plaintiffs Alejandro Perez Ramirez, Jilmar Ramirez (aka Bryan Garcia), Jose Estuardo

Perez Ramirez, Marcos Israel Perez Ramirez (aka Victor Perez), Omar Everardo Clemente

Ramirez, and Yeiser Lopez, individually and on behalf of others similarly situated (collectively,

"Plaintiffs"), by and through their attorneys, CSM Legal, P.C., upon their knowledge and belief,

and as against HERMES B NY LLC (d/b/a Empanada Mama Express), PGNV LLC (d/b/a

Empanada Mama), ("Defendant Corporations") and Socrates Nanas, ("Individual Defendant"),

(collectively, "Defendants"), allege as follows:

## NATURE OF ACTION

1.      Plaintiffs are former employees of Defendants HERMES B NY LLC (d/b/a Empanada Mama Express), PGNV LLC (d/b/a Empanada Mama), and Socrates Nanas.

2.       Defendants own, operate, or control two Latin American restaurants and catering services, located at 95 Allen Street, New York, NY 10002, under the name "Empanada Mama Express" and at 765 9th Avenue, New York, NY, 10019, under the name "Empanada Mama".

3.      Upon information and belief, individual Defendant Socrates Nanas, serves or served as owner, manager, principal, or agent of Defendant Corporations and, through these corporate entities, operates or operated the restaurants as a joint or unified enterprise.

4.      Plaintiffs were employed as delivery workers and a dishwasher at the restaurants located at 95 Allen Street, New York, NY 10002 and 765 9th Avenue, New York, NY, 10019.

5.      Plaintiffs were ostensibly employed as delivery workers. However, they were required to spend a considerable part of their work day performing non-tipped duties, including but not limited to taking out the trash, making sauces, cleaning the bathrooms, cleaning outside the restaurant, washing the rugs, wiping down the windows, sweeping and mopping, bringing down inventory to the basement, and cleaning the basement (hereafter the "non-tipped duties").

6.      At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage, overtime, and spread of hours compensation for the hours that they worked.

7.      Rather, Defendants failed to maintain accurate recordkeeping of the hours worked and failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

8.      Further, Defendants failed to pay Plaintiff Jose the required "spread of hours" pay for any day in which he had to work over 10 hours a day.

9.      Defendants employed and accounted for Plaintiffs as delivery workers in their payroll, but in actuality their duties required a significant amount of time spent performing the non-tipped duties alleged above.

10.     Regardless, at all relevant times, Defendants paid Plaintiffs at the lowered tip-credited rate.

11.     However, under both the FLSA and NYLL, Defendants were not entitled to take a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday, or 2 hours per day, whichever is less in each day. 12 N.Y. C.R.R. §146.

12.     Upon information and belief, Defendants employed the policy and practice of disguising Plaintiffs' actual duties in payroll records by designating them as delivery workers instead of non-tipped employees. This allowed Defendants to avoid paying Plaintiffs at the minimum wage rate and enabled them to pay them at the tip-credit rate.

13.     In addition, Defendants maintained a policy and practice of unlawfully appropriating Plaintiffs' and other tipped employees' tips and made unlawful deductions from these Plaintiffs' and other tipped employees' wages.

14.     Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

15.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

16.     Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

17.     Plaintiffs now bring this action as a class action under Rule 23 and seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

19.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate two Latin American restaurants and catering services located in this district. Further, Plaintiffs were employed by Defendants in this district.

## PARTIES

*Plaintiffs*

20.     Plaintiff Alejandro Perez Ramirez ("Plaintiff Alejandro" or "Mr. Alejandro") is an adult individual residing in New York County, New York.

21.     Plaintiff Alejandro was employed by Defendants at Empanada Mama from approximately February 2019 until on or about March 2020.

22.     Plaintiff Jilmar Ramirez (aka Bryan Garcia) ("Plaintiff Jilmar" or "Mr. Jilmar") is an adult individual residing in New York County, New York.

23.     Plaintiff Jilmar was employed by Defendants at Empanada Mama and Empanada Mama Express from approximately October 2017 until on or about March 21, 2020.

24.     Plaintiff Jose Estuardo Perez Ramirez ("Plaintiff Jose" or "Mr. Jose") is an adult individual residing in New York County, New York.

25.     Plaintiff Jose was employed by Defendants at Empanada Mama from approximately April 2, 2018 until on or about March 27, 2020.

26.     Plaintiff Marcos Israel Perez Ramirez (aka Victor Perez) ("Plaintiff Marcos" or "Mr. Marcos") is an adult individual residing in New York County, New York.

27.     Plaintiff Marcos was employed by Defendants at Empanada Mama from approximately May 2018 until on or about March 14, 2020.

28.     Plaintiff Omar Everardo Clemente Ramirez ("Plaintiff Omar" or "Mr. Omar") is an adult individual residing in New York County, New York.

29.     Plaintiff Omar was employed by Defendants at Empanada Mama from approximately July 2019 until on or about March 2020.

30.     Plaintiff Yeiser Lopez ("Plaintiff Yeiser" or "Mr. Yeiser") is an adult individual residing in New York County, New York.

31.     Plaintiff Yeiser was employed by Defendants at Empanada Mama from approximately May 2018 until on or about April 2020.

*Defendants*

32.     At all relevant times, Defendants own, operate, or control two Latin American restaurants and catering services, located at 95 Allen Street, New York, NY 10002, under the name "Empanada Mama Express" and at 765 9th Avenue, New York, NY, 10019, under the name "Empanada Mama".

33.     Upon information and belief, HERMES B NY LLC (d/b/a Empanada Mama Express) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 95 Allen Street, New York, NY 10002.

34.     Upon information and belief, PGNV LLC (d/b/a Empanada Mama) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 765 9th Avenue, New York, NY, 10019.

35.     Defendant Socrates Nanas is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Socrates Nanas is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Socrates Nanas possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

36.     Defendants operate two Latin American restaurants and catering services located in multiple neighborhoods in Manhattan.

37.     Individual Defendant, Socrates Nanas, possesses operational control over Defendant Corporations, possesses ownership interests in Defendant Corporations, and controls significant functions of Defendant Corporations.

38.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

39.     Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

40.     Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

41.     In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

42.     Upon information and belief, Individual Defendant Socrates Nanas operates Defendant Corporations as either alter egos of himself and/or fails to operate Defendant Corporations as entities legally separate and apart from himself, by among other things:

a)  failing to adhere to the corporate formalities necessary to operate Defendant Corporations as Corporations,

b)  defectively forming or maintaining the corporate entities of Defendant Corporations, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c)  transferring assets and debts freely as between all Defendants,

d)   operating Defendant Corporations for his own benefit as the sole or majority shareholder,

e)   operating Defendant Corporations for his own benefit and maintaining control over these corporations as closed Corporations,

f)   intermingling assets and debts of his own with Defendant Corporations,

g)   diminishing and/or transferring assets of Defendant Corporations to avoid full liability as necessary to protect his own interests, and

h)   Other actions evincing a failure to adhere to the corporate form.

43.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

44.     In each year from 2017 through 2020, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

45.     In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the restaurants on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

46.     Plaintiffs are former employees of Defendants who ostensibly were employed as delivery workers. However, at all relevant times, they spent over 20% of each shift performing the non-tipped duties described above.

47.     Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C.

216(b).

*Plaintiff Alejandro Perez Ramirez*

48.     Plaintiff Alejandro was employed by Defendants from approximately February 2019

until on or about March 2020.

49.     Defendants ostensibly employed Plaintiff Alejandro as a delivery worker.

50.     However, Plaintiff Alejandro was also required to spend a significant portion of his

work day performing the non-tipped duties described above.

51.     Although Plaintiff Alejandro ostensibly was employed as a delivery worker, he spent

over 20% of each day performing non-tipped work throughout his employment with Defendants.

52.     Plaintiff Alejandro regularly handled goods in interstate commerce, such as food and

other supplies produced outside the State of New York.

53.     Plaintiff Alejandro's work duties required neither discretion nor independent

judgment.

54.     From approximately February 2019 until on or about March 2020, Plaintiff Alejandro

worked from approximately 5:00 p.m. until on or about 11:00 p.m., 2 days a week and from

approximately 5:00 p.m. until on or about 11:30 p.m. to 12:00 p.m., 2-3 days per week (typically 29

hours per week).

55.     Throughout his employment, Defendants paid Plaintiff Alejandro his wages by

check.

56.     From approximately February 2019 until on or about March 2020, Defendants paid

Plaintiff Alejandro $12.50 per hour.

57.     However, Defendants paid Plaintiff Alejandro a week late on at least two occasions.

58.     Defendants never granted Plaintiff Alejandro any breaks or meal periods of any kind.

59.     Plaintiff Alejandro was never notified by Defendants that his tips were being included as an offset for wages.

60.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Alejandro's wages.

61.     Upon information and belief, Defendants withheld a portion of Plaintiff Alejandro's tips; specifically, Defendants regularly pocketed approximately 50% of tips from large orders.

62.     Although Plaintiff Alejandro was required to keep track of his time, the time tracking device automatically deducted 30 minutes from his daily hours, thereby his total hours worked were not properly accounted for.

63.     On at least one occasion, Defendants required Plaintiff Alejandro to sign a document, the contents of which he was not allowed to review in detail.

64.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Alejandro regarding overtime and wages under the FLSA and NYLL.

65.     Defendants did not provide Plaintiff Alejandro an accurate statement of wages, as required by NYLL 195(3).

66.     In fact, Defendants adjusted Plaintiff Alejandro's paystubs so that they reflected inaccurate wages and hours worked. More specifically, Defendants deducted time for lunch breaks from Plaintiff Alejandro's paychecks, which they did not allow him to take.

67.     In addition, on two occasions Plaintiff Alejandro received fake money from customers and had to pay Defendants for those deliveries.

68.     Defendants did not give any notice to Plaintiff Alejandro, in English and in Spanish (Plaintiff Alejandro's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

69.     Defendants required Plaintiff Alejandro to purchase "tools of the trade" with his own funds—including a bicycle, a helmet, a vest, a backpack, a lock, a charger for the battery, and expenses for charging the battery.

*Plaintiff Jilmar Ramirez (aka Bryan Garcia)*

70.     Plaintiff Jilmar was employed by Defendants from approximately October 2017 until on or about March 21, 2020.

71.     Defendants ostensibly employed Plaintiff Jilmar as a delivery worker.

72.     However, Plaintiff Jilmar was also required to spend a significant portion of his work day performing the non-tipped duties described above.

73.     Although Plaintiff Jilmar ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

74.     Plaintiff Jilmar regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

75.     Plaintiff Jilmar's work duties required neither discretion nor independent judgment.

76.     At all relevant times, Plaintiff Jilmar regularly worked in excess of 40 hours per week.

77.     From approximately October 2017 until on or about December 2017, Plaintiff Jilmar worked from approximately 4:00 p.m. until on or about 11:00 p.m. to 12:30 a.m., 6 days a week (typically 42 to 51 hours per week).

78.     From approximately January 2018 until on or about July 2018, Plaintiff Jilmar worked from approximately 5:00 p.m. until on or about 12:00 a.m. to 12:45 a.m., 6 days a week (typically 42 to 46.5 hours per week).

79.     During approximately August 2018, Plaintiff Jilmar worked from approximately 9:00 p.m. until on or about 6:00 a.m. to 7:00 a.m., 5 days a week (typically 45 to 50 hours per week).

80.     From approximately October 2018 until on or about December 2018, Plaintiff Jilmar worked from approximately 4:00 p.m. until on or about 11:30 p.m. to 12:00 a.m., 5 days a week (typically 37.5 to 40 hours per week).

81.     From approximately January 2019 until on or about December 2019, Plaintiff Jilmar worked from approximately 12:00 a.m. until on or about 6:00 a.m. to 6:30 a.m., 6 days a week (typically 36 to 39 hours per week).

82.     From approximately January 2020 until on or about March 21, 2020, Plaintiff Jilmar worked from approximately 9:00 p.m. until on or about 5:00 a.m., 5 days a week (typically 40 hours per week).

83.     Throughout his employment, Defendants paid Plaintiff Jilmar his wages by check.

84.     From approximately October 2017 until on or about December 2017, Defendants paid Plaintiff Jilmar $11.55 per hour.

85.     From approximately January 2018 until on or about December 2018, Defendants paid Plaintiff Jilmar $13.65 per hour.

86.     From approximately January 2019 until on or about December 2019, Defendants paid Plaintiff Jilmar $12.50 per hour.

87.     Defendants never granted Plaintiff Jilmar any breaks or meal periods of any kind.

88.     Plaintiff Jilmar was never notified by Defendants that his tips were being included as an offset for wages.

89.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Jilmar's wages.

90.     Upon information and belief, Defendants withheld a portion of Plaintiff Jilmar's tips; specifically, Defendants regularly pocketed approximately 50% of tips from large orders.

91.     Although Plaintiff Jilmar was required to keep track of his time, the time tracking device automatically deducted 30 minutes from his daily hours, thereby his total hours worked were not properly accounted for.

92.     On at least one occasion, Defendants required Plaintiff Jilmar to sign a document, the contents of which he was not allowed to review in detail.

93.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Jilmar regarding overtime and wages under the FLSA and NYLL.

94.     Defendants did not provide Plaintiff Jilmar an accurate statement of wages, as required by NYLL 195(3).

95.     In fact, Defendants adjusted Plaintiff Jilmar's paystubs so that they reflected inaccurate wages and hours worked. More specifically, Defendants deducted time for lunch breaks from Plaintiff Jilmar's paychecks, which they did not allow him to take.

96.     Defendants did not give any notice to Plaintiff Jilmar, in English and in Spanish (Plaintiff Jilmar's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

97.     Defendants required Plaintiff Jilmar to purchase "tools of the trade" with his own funds—including a bicycle, bike lights, a helmet, a vest, bike locks, a backpack, and expenses for charging his bicycle's battery.

*Plaintiff Jose Estuardo Perez Ramirez*

98.     Plaintiff Jose was employed by Defendants from approximately April 2, 2018, until on or about March 27, 2020.

99.     Defendants ostensibly employed Plaintiff Jose as a delivery worker.

100.    However, Plaintiff Jose was also required to spend a significant portion of his work day performing the non-tipped duties described above.

101.    Although Plaintiff Jose ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

102.    Plaintiff Jose regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

103.    Plaintiff Jose's work duties required neither discretion nor independent judgment.

104.    Throughout his employment with Defendants, Plaintiff Jose regularly worked in excess of 40 hours per week.

105.    From approximately April 2018 until on or about June 2018, Plaintiff Jose worked from approximately 5:00 p.m. until on or about 11:00 p.m. to 12:00 a.m., 4 days a week (typically 24 to 28 hours per week).

106.    From approximately June 2018 until on or about March 2020, Plaintiff Jose worked from approximately 5:00 p.m. until on or about 11:00 p.m. to 12:00 a.m., 3 days a week and from approximately 10:00 a.m. until on or about 8:00 p.m. to 9:00 (or from approximately 12:00 p.m. to 10:00 p.m. to 10:30 p.m.,) 2 days a week (typically 38 to 42.5 hours per week).

107.    Throughout his employment, Defendants paid Plaintiff Jose his wages by check.

108.    From approximately April 2018 until on or about December 2018, Defendants paid Plaintiff Jose $13.65 per hour.

109.    From approximately January 2019 until on or about March 27, 2020, Defendants paid Plaintiff Jose $12.50 per hour.

110.    However, Defendants paid Plaintiff Jose a week late on at least two occasions.

111.    Although Defendants granted Plaintiff Jose 30-minute breaks, they were frequently interrupted.

112.    Plaintiff Jose was never notified by Defendants that his tips were being included as an offset for wages.

113.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Jose's wages.

114.    Upon information and belief, Defendants withheld a portion of Plaintiff Jose's tips; specifically, Defendants regularly pocketed approximately 50% of tips from large orders.

115.    Although Plaintiff Jose was required to keep track of his time, the time tracking device automatically deducted 30 minutes from his daily hours, thereby his total hours worked were not properly accounted for.

116.    On at least one occasion, Defendants required Plaintiff Jose to sign a document, the contents of which he was not allowed to review in detail.

117.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Jose regarding overtime and wages under the FLSA and NYLL.

118.    Defendants did not provide Plaintiff Jose an accurate statement of wages, as required by NYLL 195(3).

119.    In fact, Defendants adjusted Plaintiff Jose's paystubs so that they reflected inaccurate wages and hours worked. More specifically, Defendants deducted time for interrupted lunch breaks from Plaintiff Jose's paychecks.

120.    Defendants did not give any notice to Plaintiff Jose, in English and in Spanish (Plaintiff Jose's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

121.    Defendants required Plaintiff Jose to purchase "tools of the trade" with his own funds—including 2 electric bicycles, a helmet, a vest, lights, and expenses to charge his battery.

*Plaintiff Marcos Israel Perez Ramirez (aka Victor Perez)*

122.    Plaintiff Marcos was employed by Defendants from approximately May 2018 until on or about March 14, 2020.

123.    Defendants ostensibly employed Plaintiff Marcos as a delivery worker.

124.    However, Plaintiff Marcos was also required to spend a significant portion of his work day performing the non-tipped duties described above.

125.    Although Plaintiff Marcos ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

126.    Plaintiff Marcos regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

127.    Plaintiff Marcos' work duties required neither discretion nor independent judgment.

128.    From approximately May 2018 until on or about July 2018, Plaintiff Marcos worked from approximately 10:00 a.m. until on or about 4:00 p.m., 4 days a week (typically 24 hours per week).

129.    From approximately July 2018 until on or about March 2020, Plaintiff Marcos worked from approximately 10:00 a.m. until on or about 4:00 p.m., 4 days a week (typically 30 hours per week).

130.    Throughout his employment, Defendants paid Plaintiff Marcos his wages by check.

131.    From approximately May 2018 until on or about December 2018, Defendants paid Plaintiff Marcos $13.65 per hour.

132.    From approximately January 2019 until on or about March 14, 2020, Defendants paid Plaintiff Marcos $12.50 per hour.

133.    Defendants never granted Plaintiff Marcos any breaks or meal periods of any kind.

134.    Plaintiff Marcos was never notified by Defendants that his tips were being included as an offset for wages.

135.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Marcos' wages.

136.    Upon information and belief, Defendants withheld a portion of Plaintiff Marcos' tips; specifically, Defendants regularly pocketed approximately 50% of tips from large orders.

137.    Although Plaintiff Marcos was required to keep track of his time, the time tracking device automatically deducted 30 minutes from his daily hours, thereby his total hours worked were not properly accounted for.

138.    On at least one occasion, Defendants required Plaintiff Marcos to sign a document, the contents of which he was not allowed to review in detail.

139.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Marcos regarding overtime and wages under the FLSA and NYLL.

140.    Defendants did not provide Plaintiff Marcos an accurate statement of wages, as required by NYLL 195(3).

141.    In fact, Defendants adjusted Plaintiff Marcos' paystubs so that they reflected inaccurate wages and hours worked. More specifically, Defendants deducted time for lunch breaks from Plaintiff Marcos' paychecks, which they did not allow him to take.

142.    Defendants did not give any notice to Plaintiff Marcos, in English and in Spanish (Plaintiff Marcos' primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

143.    Defendants required Plaintiff Marcos to purchase "tools of the trade" with his own funds—including a bicycle, a backpack, and a helmet.

*Plaintiff Omar Everardo Clemente Ramirez*

144.    Plaintiff Omar was employed by Defendants from approximately July 2019 until on or about March 2020.

145.    Defendants ostensibly employed Plaintiff Omar as a delivery worker.

146.    However, Plaintiff Omar was also required to spend a significant portion of his work day performing the non-tipped duties described above.

147.    Although Plaintiff Omar ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

148.    Plaintiff Omar regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

149.    Plaintiff Omar's work duties required neither discretion nor independent judgment.

150.    From approximately July 2019 until on or about March 2020, Plaintiff Omar worked from approximately 7:00 p.m. until on or about 12:00 a.m. to 1:00 a.m., 3 days a week and from

approximately 7:00 p.m. until on or about 3:00 a.m. to 4:00 a.m., 2 days a week (typically 31-36 hours per week).

151.     Throughout his employment, Defendants paid Plaintiff Omar his wages by check.

152.     From approximately July 2019 until on or about March 2020, Defendants paid Plaintiff Omar $12.50 per hour.

153.     However, Defendants paid Plaintiff Omar a week late on at least two occasions.

154.     Defendants never granted Plaintiff Omar any breaks or meal periods of any kind.

155.     Plaintiff Omar was never notified by Defendants that his tips were being included as an offset for wages.

156.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Omar's wages.

157.     Upon information and belief, Defendants withheld a portion of Plaintiff Omar's tips; specifically, Defendants regularly pocketed approximately 50% of tips from large orders.

158.     Although Plaintiff Omar was required to keep track of his time, the time tracking device automatically deducted 30 minutes from his daily hours, thereby his total hours worked were not properly accounted for.

159.     On at least one occasion, Defendants required Plaintiff Omar to sign a document, the contents of which he was not allowed to review in detail.

160.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Omar regarding overtime and wages under the FLSA and NYLL.

161.     Defendants did not provide Plaintiff Omar an accurate statement of wages, as required by NYLL 195(3).

162.    In fact, Defendants adjusted Plaintiff Omar's paystubs so that they reflected inaccurate wages and hours worked. More specifically, Defendants deducted time for lunch breaks from Plaintiff Omar's paychecks, which they did not allow him to take.

163.    Defendants did not give any notice to Plaintiff Omar, in English and in Spanish (Plaintiff Omar's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

164.    Defendants required Plaintiff Omar to purchase "tools of the trade" with his own funds—including a bicycle, a helmet, a vest, lights, and a backpack.

*Plaintiff Yeiser Lopez*

165.    Plaintiff Yeiser was employed by Defendants from approximately May 2018 until on or about April 2020.

166.    From approximately May 2018 until on or about June 2018, Defendants employed Plaintiff Yeiser as a dishwasher.

167.    From approximately July 2018 until on or about April 2020, Defendants ostensibly employed Plaintiff Yeiser as a delivery worker.

168.    However, when employed as a delivery worker, Plaintiff Yeiser was also required to spend a significant portion of his work day performing the non-tipped duties described above.

169.    Although Plaintiff Yeiser ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

170.    Plaintiff Yeiser regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

171.    Plaintiff Yeiser's work duties required neither discretion nor independent judgment.

172.    Throughout his employment with Defendants, Plaintiff Yeiser regularly worked in excess of 40 hours per week.

173.    From approximately May 2018 until on or about June 2018, Plaintiff Yeiser worked from approximately 4:00 p.m. until on or about 12:00 a.m., 5 days a week (typically 40 hours per week).

174.    From approximately July 2018 until on or about October 2018, Plaintiff Yeiser worked from approximately 6:00 p.m. until on or about 2:00 a.m. to 3:00 a.m., 5 days a week (typically 40-45 hours per week).

175.    From approximately November 2018 until on or about January 2019, Plaintiff Yeiser worked from approximately 10:00 a.m. until on or about 8:00 p.m., 2 days a week and from approximately 6:00 p.m. until on or about 2:00 a.m., 3 days a week (typically 44 hours per week).

176.    From approximately February 2019 until on or about August 2019, Plaintiff Yeiser worked from approximately 6:00 p.m. until on or about 12:00 a.m., 5 days a week (typically 30 hours per week).

177.    From approximately September 2019 until on or about April 2020, Plaintiff Yeiser worked from approximately 6:00 p.m. until on or about 12:00 a.m., 4 days a week (typically 24 hours per week).

178.    Throughout his employment, Defendants paid Plaintiff Yeiser his wages by check.

179.    From approximately May 2018 until on or about December 2018, Defendants paid Plaintiff Yeiser $13.65 per hour.

180.    From approximately January 2019 until on or about April 2020, Defendants paid Plaintiff Yeiser $12.50 per hour.

181.    Defendants never granted Plaintiff Yeiser any breaks or meal periods of any kind.

182.    Plaintiff Yeiser was never notified by Defendants that his tips were being included as an offset for wages.

183.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Yeiser's wages.

184.    Upon information and belief, Defendants withheld a portion of Plaintiff Yeiser's tips; specifically, Defendants regularly pocketed approximately 50% of tips from large orders.

185.    Although Plaintiff Yeiser was required to keep track of his time, the time tracking device automatically deducted 30 minutes from his daily hours, thereby his total hours worked were not properly accounted for.

186.    On at least one occasion, Defendants required Plaintiff Yeiser to sign a document, the contents of which he was not allowed to review in detail.

187.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Yeiser regarding overtime and wages under the FLSA and NYLL.

188.    Defendants did not provide Plaintiff Yeiser an accurate statement of wages, as required by NYLL 195(3).

189.    In fact, Defendants adjusted Plaintiff Yeiser's paystubs so that they reflected inaccurate wages and hours worked. More specifically, Defendants deducted time for lunch breaks from Plaintiff Yeiser's paychecks, which they did not allow him to take.

190.    Defendants did not give any notice to Plaintiff Yeiser of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

191.    Defendants required Plaintiff Yeiser to purchase "tools of the trade" with his own funds—including a bicycle, batteries for the bicycle, a backpack, a chain and lock, lights, a helmet and a vest.

*Defendants' General Employment Practices*

192.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage, spread of hours pay, and overtime compensation as required by federal and state laws.

193.     Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

194.     Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, and resulted in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

195.     Defendants required Plaintiffs and all other delivery workers to perform general non-tipped tasks in addition to their primary duties as delivery workers.

196.     These Plaintiffs and all similarly situated employees, ostensibly were employed as tipped employees by Defendants, although their actual duties included a significant amount of time spent performing the non-tipped duties outlined above.

197.      The Plaintiffs' duties were not incidental to their occupation as tipped workers, but instead constituted entirely unrelated general restaurant work with duties, including the non-tipped duties described above.

198.     At all relevant times, these Plaintiffs and all other tipped workers were paid at the lowered tip-credit rate by Defendants.

199.     However, under state law, Defendants were not entitled to a tip credit because the tipped worker's and these Plaintiffs' non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146).

200.     New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he or she has been assigned to work in an occupation in which tips are not customarily received. (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

201.     In violation of federal and state law as codified above, Defendants classified these Plaintiffs and other tipped workers as tipped employees, and paid them at a rate that was at the lowered tip-credit rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

202.     Defendants failed to inform Plaintiffs who received tips that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

203.     Defendants failed to inform Plaintiffs who received tips, that their tips were being credited towards the payment of the minimum wage.

204.     Defendants failed to maintain a record of tips earned by Plaintiffs who worked as delivery workers for the tips they received.

205.     As part of its regular business practice, Defendants intentionally, willfully, and repeatedly harmed Plaintiffs who received tips, by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL. This policy and pattern or practice included depriving delivery workers of a portion of the tips earned during the course of employment.

206.     Defendants unlawfully misappropriated charges purported to be gratuities received by tipped Plaintiffs, and other tipped employees, in violation of New York Labor Law § 196-d (2007).

207.     Under the FLSA and NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive or forgo the tip credit and pay them the full hourly minimum wage.

208.     Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

209.     On a number of occasions, Defendants required Plaintiffs to sign a document the contents of which they were not allowed to review in detail.

210.     Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

211.     Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

212.     Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

213.     Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

214.     Defendants failed to provide Plaintiffs and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

215.     Defendants failed to provide Plaintiffs and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## **FLSA COLLECTIVE ACTION CLAIMS**

216.     Plaintiffs bring their FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA and Rule 23 Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA and Rule 23 Class Period").

217.     At all relevant times, Plaintiffs and other members of the FLSA and Rule 23 Class were similarly situated in that they had substantially similar job requirements and pay provisions,

and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records under the FLSA.

218.    The claims of Plaintiffs stated herein are similar to those of the other employees.

## **FEDERAL RULE 23 CLASS ACTION ALLEGATIONS**

219.    Plaintiffs sue on their own behalf and on behalf of a class of persons similarly situated under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

220.    Plaintiffs bring their New York Labor Law minimum wage, overtime, spread-of-hours, wage deduction, and liquidated damages claims on behalf of all persons who are or were employed by Defendants in the State of New York, on or after the date that is six years before the filing of the complaint in this case, to entry of judgment in this case (the "Class Period"). All said persons, including Plaintiffs, are referred to herein as the "Class."

221.    The persons in the Class are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and facts on which the calculation of that number are presently within the sole control of Defendants, there are approximately over sixty members of the Class during the Class Period.

222.    There are questions of law and fact common to the Class including:

a)  What proof of hours worked is sufficient where Defendants fail in their duty to maintain time records;

b)  What were the policies, practices, programs, procedures, protocols and plans of Defendants regarding payment of wages for all hours worked;

c)   What were the policies, practices, programs, procedures, protocols and plans of Defendants regarding payment of at least minimum wages for all hours worked;

d)   Whether Defendants failed and/or refused to pay Plaintiffs the minimum wage and overtime at the premium rate within the meaning of the New York Labor Law;

e)   Whether Defendants failed and/or refused to pay Plaintiffs "Spread of Hours" Pay;

f)   Whether Defendants improperly deducted "shorts" from the Plaintiffs' wages;

g)   At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay the class members for their work; and

h)   What are the common conditions of employment and in the workplace, such as recordkeeping, clock-in procedures, breaks, and policies and practices that affect whether the class was paid at overtime rates for minimum wage and overtime work.

223.    The claims of the representative parties are typical of the claims of the class. Plaintiffs and the other class members were subjected to Defendants' policies, practices, programs, procedures, protocols and plans alleged herein concerning non-payment of overtime, non-payment of wages, and failure to keep required records. The job duties of the named Plaintiffs were and are typical of those of class members.

224.    The representative parties will fairly and adequately protect the interests of the Class and have no interests antagonistic to the class. The Named Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

225.    The common questions of law and fact predominate over questions affecting only individual members.

226.    A class action is superior to other available methods for fairly and efficiently adjudicating controversy, particularly in the context of wage and hour litigation, where individual

plaintiffs lack the financial resources to prosecute a lawsuit in federal court against corporate defendants vigorously. The damages suffered by individual class members are small, compared to the expense and burden of individual prosecution of this litigation. Class action treatment will obviate unduly duplicative litigation and the possibility of inconsistent judgments.

227.     Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

228.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

229.     At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d). Defendants had the power to hire and fire Plaintiffs (and the FLSA and Rule 23 Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

230.     At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

231.     Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

232.     Defendants failed to pay Plaintiffs (and the FLSA and Rule 23 Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

233.     Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

234.     Plaintiffs (and the FLSA and Rule 23 Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

235.     Plaintiffs Jilmar, Jose, and Yeiser repeat and reallege all paragraphs above as though fully set forth herein.

236.     Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs Jilmar, Jose, and Yeiser (and the FLSA and Rule 23 Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

237.     Defendants' failure to pay Plaintiffs Jilmar, Jose, and Yeiser (and the FLSA and Rule 23 Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

238.     Plaintiffs Jilmar, Jose, and Yeiser (and the FLSA and Rule 23 Class members) were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

239.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

240.     At all times relevant to this action, Defendants were Plaintiffs' (and the FLSA and Rule 23 class members') employers within the meaning of the N.Y. Lab. Law §§ 2 and 651. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

241.     Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs (and the FLSA and Rule 23 class members) less than the minimum wage.

242.     Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 class members') the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

243.     Plaintiffs (and the FLSA and Rule 23 class members) were damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

## VIOLATION OF THE OVERTIME PROVISIONS

## OF THE NEW YORK STATE LABOR LAW

244.     Plaintiffs Jilmar, Jose, and Yeiser repeat and reallege all paragraphs above as though fully set forth herein.

245.     Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs Jilmar, Jose, and Yeiser (and the FLSA and Rule 23 class members') overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

246.     Defendants' failure to pay Plaintiffs Jilmar, Jose, and Yeiser (and the FLSA and Rule 23 class members') overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

247.     Plaintiffs Jilmar, Jose, and Yeiser (and the FLSA and Rule 23 class members) were damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

## VIOLATION OF THE SPREAD OF HOURS WAGE ORDER

## OF THE NEW YORK COMMISSIONER OF LABOR

248.     Plaintiff Jose repeats and realleges all paragraphs above as though fully set forth herein.

249.     Defendants failed to pay Plaintiff Jose (and the FLSA and Rule 23 class members) one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiff's spread of hours exceeded ten hours in violation of NYLL §§ 650 *et seq*. and 12 N.Y.C.R.R. §§ 146-1.6.

250.     Defendants' failure to pay Plaintiff Jose (and the FLSA and Rule 23 class members') an additional hour's pay for each day Plaintiff's spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

251.     Plaintiff Jose (and the FLSA and Rule 23 class members) were damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

### VIOLATION OF THE NOTICE AND RECORDKEEPING

### REQUIREMENTS OF THE NEW YORK LABOR LAW

252.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

253.     Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

254.　　Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION

### VIOLATION OF THE WAGE STATEMENT PROVISIONS

### OF THE NEW YORK LABOR LAW

255.　　Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

256.　　With each payment of wages, Defendants failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

257.　　Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## EIGHTH CAUSE OF ACTION

### RECOVERY OF EQUIPMENT COSTS

258.　　Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

259.　　Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA and NYLL. 29 U.S.C. § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

260.     Plaintiffs (and the FLSA and Rule 23 class members) were damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

## UNLAWFUL DEDUCTIONS FROM TIPS IN VIOLATION

## OF THE NEW YORK LABOR LAW

261.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

262.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

263.     New York State Labor Law § 196-d prohibits any employer or his agents, including owners and managers, from demanding or accepting, directly or indirectly, any part of the gratuities received by an employee, or retaining any part of a gratuity, or any charge purported to be a gratuity, for an employee.

264.     Defendants unlawfully misappropriated a portion of Plaintiffs' tips that were received from customers.

265.     Defendants knowingly and intentionally retained a portion of Plaintiffs' tips in violations of the NYLL and supporting Department of Labor Regulations. Plaintiffs (and the FLSA and Rule 23 class members) were damaged in an amount to be determined at trial.

## TENTH CAUSE OF ACTION

## VIOLATION OF THE TIMELY PAYMENT PROVISIONS

## OF THE NEW YORK LABOR LAW

266.     Plaintiffs Alejandro, Jose, and Omar repeat and reallege all paragraphs above as though set forth fully herein.

267.     Defendants did not pay Plaintiffs Alejandro, Jose, and Omar on a regular weekly basis, in violation of NYLL §191.

268.     Defendants are liable to each Plaintiff in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)     Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)     Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA and Rule 23 Class members;

(c)     Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs Jilmar, Jose, and Yeiser and the FLSA and Rule 23 Class members;

(d)     Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA and Rule 23 Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)     Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA and Rule 23 Class members;

(f)      Awarding Plaintiffs and the FLSA and Rule 23 Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)      Awarding Plaintiffs and the FLSA and Rule 23 Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)      Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)      Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs Jilmar, Jose, and Yeiser;

(j)      Declaring that Defendants violated the spread-of-hours requirements of the NYLL and supporting regulations as to Plaintiff Jose (and the FLSA and Rule 23 Class members);

(k)      Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' and members of the FLSA and Rule 23 Class compensation, hours, wages and any deductions or credits taken against wages;

(l)      Declaring that Defendants' violations of the provisions of the NYLL and spread of hours wage order were willful as to Plaintiffs;

(m)      Awarding Plaintiffs and members of the FLSA and Rule 23 Class damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable

(n)      Awarding Plaintiffs and members of the FLSA and Rule 23 Class damages for

Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(o)    Awarding Plaintiffs and members of the FLSA and Rule 23 Class liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, overtime compensation, and spread of hours pay shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(p)    Awarding Plaintiffs and the FLSA and Rule 23 Class members pre-judgment and post-judgment interest as applicable;

(q)    Awarding Plaintiffs and the FLSA and Rule 23 Class members the expenses incurred in this action, including costs and attorneys' fees;

(r)    Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(s)    All such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated:  New York, New York

February 24, 2023

CSM LEGAL, P.C

By:    _____/s/ Catalina Sojo, Esq._____
Catalina Sojo [CS-5779517]
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620

*Attorneys for Plaintiffs*

# CSM Legal, P.C.
Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165
catalina@csmlegal.com

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

November 29, 2021

BY ELECTRONIC SIGNATURE

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Alejandro Perez Ramirez

Legal Representative / Abogado:        CSM Legal, P.C.

Signature / Firma:

Date / Fecha:                    29 de noviembre de 2021

# CSM LEGAL, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165
catalina@csm-legal.com

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

February 24, 2023

BY ELECTRONIC SIGNATURE

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                      Jilmar Ramirez

Legal Representative / Abogado:     CSM Legal, P.C.

Signature / Firma:

Date / Fecha:                       24 de febrero de 2023

# CSM LEGAL, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165
catalina@csm-legal.com

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

February 2, 2022

BY ELECTRONIC SIGNATURE

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                              Jose Estuardo Perez Ramirez

Legal Representative / Abogado:        CSM Legal, P.C.

Signature / Firma:

Date / Fecha:                                  2 de febrero de 2022

# CSM LEGAL, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510                                          Telephone: (212) 317-1200
New York, New York 10165                                          Facsimile: (212) 317-1620
catalina@csm-legal.com

February 24, 2023

BY ELECTRONIC SIGNATURE


TO:      Clerk of Court,


I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**


Name / Nombre:                    Marcos Israel Perez Ramirez


Legal Representative / Abogado:    CSM Legal, P.C.


Signature / Firma:


Date / Fecha:                     24 de febrero de 2023

# CSM LEGAL, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510                                                   Telephone: (212) 317-1200
New York, New York 10165                                                      Facsimile: (212) 317-1620

————————

catalina@csm-legal.com

February 2, 2022

BY HAND

TO:      Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. **(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Omar Everardo Ramirez
Legal Representative / Abogado:   CSM Legal, P.C.

Signature / Firma:               _____

Date / Fecha:                     2 de febrero 2022

*Certified as a minority-owned business in the State of New York*

# CSM Legal, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

————

catalina@csmlegal.com

February 7, 2022

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                                    Yeiser Lopez

Legal Representative / Abogado:        CSM Legal, P.C.

Signature / Firma:

Date / Fecha:                                         7 de febrero 2022

*Certified as a minority-owned business in the State of New York*